## THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA – TAMPA DIVISION

| | |
|---|---|
| LEAH LIGON, an individual; CARLA CAMPBELL, an individual; and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br> vs.<br><br>PINK PONY, LLC, a Florida Limited Liability Company; DEWAYNE ALLEN LEVESQUE, and individual; SAM RODRIGUEZ, an individual; DOE MANAGERS 1-3; and DOES 4-100, inclusive,<br><br>   Defendants. | ) Case No.:<br>) **COLLECTIVE ACTION**<br>)<br>) **COMPLAINT FOR DAMAGES**<br>) **1. Failure to Pay Minimum Wages, 29 U.S.C. § 206;**<br>) **2. Failure to Pay Overtime Wages, 29 U.S.C. § 207; and**<br>) **3. Unlawful Taking of Tips, 29 U.S.C. § 203**<br>)<br>) **DEMAND FOR JURY TRIAL** |

Plaintiffs LEAH LIGON and CARLA CAMPBELL ("Plaintiffs"), individually and on behalf of all others similarly situated, allege the following upon information and belief, based upon investigation of counsel, published reports, and personal knowledge:

## I. NATURE OF THE ACTION

1. Plaintiffs alleges causes of action against defendants PINK PONY, LLC, a Florida limited liability company ("Defendant" or "Pink Pony"), DEQAYNE ALLEN LEVESQUE, and individual ("Defendant" or "Levesque"), SAM RODRIGUEZ, an individual ("Defendant" or "Rodriguez"); DOE MANAGERS 1-3; and DOES 4-100, inclusive (collectively, "Defendants") for damages due to Defendants evading the

mandatory minimum wage and overtime provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*("FLSA") and illegally absconding with Plaintiffs' tips.

2.      These causes of action arise from Defendants' willful actions while Plaintiffs were employed by Defendants from approximately 2017 through 2018. During their time being employed by Defendants, Plaintiffs were denied minimum wage payments and denied overtime as part of Defendants' scheme to classify Plaintiffs and other dancers/entertainers as "independent contractors." As the Department of Labor explained in a recent  Administrative Interpretation:

> Misclassification of employees as independent contractors is found in an increasing number of workplaces in the United States, in part reflecting larger restructuring of business organizations. When employers improperly classify employees as independent contractors, the employees may not receive important workplace protections such as the minimum wage, overtime compensation, unemployment insurance, and workers' compensation. Misclassification also results in lower tax revenues for government and an uneven playing field for employers who properly classify their workers. Although independent contracting relationships can be advantageous for workers and businesses, some employees may be intentionally misclassified as a means to cut costs and avoid compliance with labor laws.[1]

As alleged in more detail below, that is exactly what Defendants are doing in this case.

3.      Plaintiffs worked at Defendants' principal place of business

---

[1]   *See* DOL Admin. Interp. No. 2015-1, available at http://www.dol.gov/whd/workers/Misclassification/AI-  2015_1.pdf.

located at 4009 W. Dr. Martin Luther King Jr. Boulevard, Tampa, Florida 33614.

4.    Pink Pony failed to pay Plaintiffs minimum wages and overtime wages for all hours worked in violation of 29 U.S.C. §§ 206 and 207 of the FLSA. Pink Pony also forced illegal kickbacks in the form of house fees that Plaintiffs were required to pay, just to work.

5.    Defendants' conduct violates the FLSA, which requires non-exempt employees to be compensated for their overtime work at a rate of one and one-half (1 ½) times their regular rate of pay. *See* 29 U.S.C. § 207(a).

6.    Furthermore, Defendants' practice of failing to pay tipped employees pursuant to 29 U.S.C. § 203(m), violates the FLSA's minimum wage provision. *See* 29 U.S.C. § 206.

7.    Plaintiffs brings a collective action to recover the unpaid overtime compensation and minimum wage owed to her individually and on behalf of all other similarly situated employees, current and former, of Defendants. Members of the Collective Action are hereinafter referred to as "FLSA Class Members."

8.    As a result of Defendants' violations, Plaintiffs and the FLSA Class Members seek to recover double damages for failure to pay minimum wage, overtime liquidated damages, interest, and attorneys' fees.

## II.    PARTIES

9.    Plaintiffs were individual adult residents of the State of Florida. Furthermore, Plaintiffs were employed by Defendants and qualifies as an "employee" of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1). Their consent to this action is attached hereto as Exhibits 1 and 2.

10.    The FLSA Class Members are all current and former exotic

dancers who worked at Pink Pony located at 4009 W. Dr. Martin Luther King Jr. Boulevard, Tampa, Florida 33614 at any time starting three (3) years before this Complaint was filed, up to the present.

11.     Pink Pony is a Florida corporation with its principal place of business at 4009 W. Dr. Martin Luther King Jr. Boulevard, Tampa, Florida 33614. At all times mentioned herein, Pink Pony was an "employer" or "joint employer" as defined by the FLSA, 29 U.S.C. § 203(d) and (g). Pink Pony may be served via its agent for service of process, Levesque, at either 4009 W. Dr. Martin Luther King Jr. Boulevard, Tampa, Florida 33614 or 1214 Bay Club Circle, Tampa, Florida 33607.

12.     Levesque was/is the main manager who executed the policies regarding payment to dancers and management of dancers, including Plaintiffs. Levesque is also the owner of Pink Pony.

13.     Levesque acted directly or indirectly on behalf of Pink Pony, and, at all times mentioned herein was an "employer" or "joint employer" of Plaintiffs within the meaning of the FLSA. He exerted operational and management control over Pink Pony, including day to day management. He was, and is, frequently present at, owned, directed, controlled and managed the operations at Pink Pony. He also controlled the nature, pay structure, and employment relationship of Plaintiffs and the FLSA Class Members. Levesque had at all times relevant to this lawsuit, the authority to hire and fire employees at Pink Pony, the authority to direct and supervise the work of employees, the authority to sign on the business' checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures. Additionally, he was responsible for the day-to-day affairs of Pink Pony. In particular, he was responsible for

determining whether Pink Pony complied with the FLSA.

14.     Rodriguez was/is the main manager who executed the policies regarding payment to dancers and management of dancers, including Plaintiffs. Levesque is also the owner of Pink Pony.

15.     Rodriguez acted directly or indirectly on behalf of Pink Pony, and, at all times mentioned herein was an "employer" or "joint employer" of Plaintiffs within the meaning of the FLSA. He exerted operational and management control over Pink Pony, including day to day management. He was, and is, frequently present at, owned, directed, controlled and managed the operations at Pink Pony. He also controlled the nature, pay structure, and employment relationship of Plaintiffs and the FLSA Class Members. Levesque had at all times relevant to this lawsuit, the authority to hire and fire employees at Pink Pony, the authority to direct and supervise the work of employees, the authority to sign on the business' checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures. Additionally, he was responsible for the day-to-day affairs of Pink Pony. In particular, he was responsible for determining whether Pink Pony complied with the FLSA.

16.     DOE MANAGERS 1-3 are the managers/owners who control the policies and enforce the policies related to employment at Pink Pony.

17.     The true names, capacities or involvement, whether individual, corporate, governmental or associate, of the Defendants named herein as DOES 4 through 100, inclusive are unknown to Plaintiffs who therefore sues said Defendants by such fictitious names. Plaintiffs pray for leave to amend this Complaint to show their true names and capacities when the same have been finally determined. Plaintiffs are informed and believe, and upon such

information and belief alleges thereon, that each of the Defendants designated herein as DOE is negligently, intentionally, strictly liable or otherwise legally responsible in some manner for the events and happenings herein referred to, and negligently, strictly liable intentionally or otherwise caused injury and damages proximately thereby to Plaintiff, as is hereinafter alleged.

18.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(r)(1) of the FLSA because they have had employees at their club engaged in commerce, which has travelled in interstate commerce. Moreover, because of Defendants' interrelated activities, they function in interstate commerce. 29 U.S.C. § 203(s)(1).

19.     Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of the statutory standard.

20.     At all material times during the three (3) years prior to the filing of this action, Defendants categorized all dancers/entertainers employed at Pink Pony as "independent contractors" and have failed and refused to pay wages or compensation to such dancers/entertainers. Plaintiffs were an individual employee who engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

21.     Plaintiffs are informed and believe that, at all relevant times herein, Defendants engaged in the acts alleged herein and/or condoned, permitted, authorized, and/or ratified the conduct of its employees and agents, and other Defendants and are vicariously or strictly liable for the wrongful conduct of its employees and agents as alleged herein.

22.     Plaintiffs are informed and believe, and on that basis alleges that, each of the Defendants acted, in all respects pertinent to this action, as the agent

or employee of each other, and carried out a joint scheme, business plan, or policy in all respect thereto and, therefore, the acts of each of these Defendants are legally attributable to the other Defendants, and that these Defendants, in all respects, acted as employers and/or joint employers of Plaintiffs in that each of them exercised control over her wage payments and control over her duties.

23.     Plaintiffs are informed and believe, and on that basis allege that, at all relevant times, each and every Defendant has been the agent, employee, representative, servant, master, employer, owner, agent, joint venture, and alter ego of each of the other and each was acting within the course and scope of his or her ownership, agency, service, joint venture and employment.

24.     At all times mentioned herein, each and every Defendant was the successor of the other and each assumes the responsibility for the acts and omissions of all other Defendants.

## III.   VENUE AND JURSIDICTION

25.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because this action arises under the FLSA, 29 U.S.C. §§ 201, *et seq.*

26.     Venue is proper in this District because all or a substantial portion of the events forming the basis of this action occurred in this District. Defendants' club is located in this District and Plaintiffs worked in this District.

## IV.   ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### (AGAINST ALL DEFENDANTS)

### A.   FACTUAL ALLEGATIONS

27.     Defendants operate an adult-oriented entertainment facility located at 4009 W. Dr. Martin Luther King Jr. Boulevard, Tampa, Florida

33614.  The pictures below depicts the outside and inside of the Club.





28.     At all times mentioned herein, Defendants were "employer(s)" or "joint employer(s)" of Plaintiffs.

29.     At all times during the three (3) years prior to the filing of the instant action, Defendants categorized all dancers/entertainers employed by Defendants as "independent contractors" and have failed and refused to pay wages to such dancers.

30.     At all times relevant to this action, Defendants exercised a great deal of operational and management control over the subject club, particularly in the areas of terms and conditions of employment applicable to dancers and entertainers.

31.     Plaintiffs began working as a dancer for Defendants in 2017 and continued through approximately 2018.

32.     The primary duty of an entertainer is to dance and entertain customers, and give them a good experience. Specifically, an entertainer performs stage and table dances, and entertains customers on an hourly basis.

33.     Stated differently, entertainers dance on stage, perform table dances, and entertain customers in VIP rooms, all while nude or semi-nude.

34.     Plaintiffs worked and performed at the adult-oriented entertainment facility multiple shifts per week. Plaintiffs were an integral part of Defendants' business which operated solely as an adult-oriented entertainment facility featuring nude or semi-nude female entertainers.

35.     Defendants did not pay entertainers on an hourly basis.

36.     Defendants exercised significant control over Plaintiffs during their shifts and would demand that Plaintiffs stay until late in the morning if they worked. If they did not, they would not be able to work the following days.

37.     Defendants set prices for all VIP performances.

38.     Defendants set the daily cover charge for customers to enter the facility and had complete control over which customers were allowed in the facility.

39.     Defendants controlled music for Plaintiffs' performances.

40.     Defendants controlled the means and manner in which Plaintiffs could perform.

41.     Defendants placed Plaintiffs on a schedule.

42.     Defendants had the authority to suspend, fine, fire, or otherwise discipline entertainers for non-compliance with their rules regarding dancing.

43.     Defendants actually suspended, fined, fired, or otherwise disciplined entertainers for non-compliance with their rules regarding dancing.

44.     Although Defendants allowed entertainers to choose their own costumes, Defendants reserved the right to decide what a particular entertainer was allowed to wear on the premises. In order to comply with Pink Pony's dress and appearance standards, Plaintiffs typically expended approximately one (1) hour of time each shift getting ready for work without being paid any wages for such time getting ready.

45.     Plaintiffs were compensated exclusively through tips from Defendants' customers. That is, Defendants did not pay Plaintiffs whatsoever for any hours worked at their establishment.

46.     Defendants also required Plaintiffs to share her tips with Defendants, other non-service employees who do not customarily receive tips, including the managers, disc jockeys, and the bouncers.

47.     Defendants are in violation of the FLSA's tipped-employee compensation provision, 29 U.S.C. § 203(m), which requires employers to pay

a tipped employee a minimum of $2.13 per hour. Defendants also violated 29 U.S.C. § 203(m) when they failed to notify the Plaintiffs about the tip credit allowance (including the amount to be credited) before the credit was utilized. That is, Defendants' exotic dancers were never made aware of how the tip credit allowance worked or what the amounts to be credited were. Furthermore, Defendants violated 29 U.S.C. § 203(m) because they did not allow Plaintiffs to retain all of their tips and instead required that she divide her tips amongst other employees who do not customarily and regularly receive tips. Because Defendants violated the tip-pool law, Defendants lose the right to take a credit toward minimum wage.

48.     Defendants exercised significant control over Plaintiffs through written and unwritten policies and procedures. Defendants had visibly posted in the employees' locker room the written employee rules for late arrivals and early leaves and the corresponding fees for which performers would be responsible.

49.     Pink Pony provided and paid for all advertising and marketing efforts undertaken on behalf of Pink Pony.

50.     Pink Pony paid for the building used by Pink Pony maintenance of the facility, the sound system, stages, lights, beverages and inventory used at the facility.

51.     Defendants made all hiring decisions regarding wait staff, security, entertainers, managerial and all other employees on the premises.

52.     Pink Pony's opportunity for profit and loss far exceeded Plaintiffs' opportunity for profit and loss from work at Pink Pony.

53.     Nude dancing is an integral part of Pink Pony's operations. Pink Pony's advertising and logo prominently displays nude dancing for its

customers. Pink Pony is well known as a "strip club."

54.     Pink Pony needs entertainers to successfully and profitably operate the Pink Pony business model.

55.     The position of entertainer requires no managerial skill of others.

56.     The position of entertainer requires little other skill or education, formal or otherwise.

57.     The only requirements to become an entertainer at Pink Pony are "physical attributes" and the ability to dance seductively. Plaintiffs did not have a formal interview but instead was glanced over "up and down" and participated in a brief audition by the manager before being offered an employment opportunity. The amount of skill required is more akin to an employment position than that of a typical independent contractor. Defendants do not require prior experience as an entertainer or any formal dance training as a job condition or prerequisite to employment. Defendants do not require the submission of an application or a resume as part of the hiring process. In fact, Plaintiffs have little or no formal dance training and experience before auditioning to dance at Pink Pony.

58.     Defendants failed to maintain records of wages, fines, fees, tips and gratuities and/or service charges paid or received by entertainers.

59.     Plaintiffs were not paid an hourly minimum wage or *any* hourly wage or salary despite being present at Defendants' facility and required to work and entertain its customers at any time during an eight-plus (8+) hour work shift.

60.     Plaintiffs were not paid overtime wages at one-and-a-half (1½) times the regular minimum wage rate for *any* hours worked despite being present at Defendants' facility and required to work and entertain its customers

for longer than eight (8) hours per shift.

61.    Plaintiffs were not paid an hourly minimum wage for the typical one (1) hour of time expended prior to each shift to get ready for work, including applying makeup and hair, and to comply with Defendants' dress and appearance standards. Plaintiffs estimate that she spent approximately five hundred U.S. Dollars ($500.00) annually on makeup, hair-related expenses and outfits.

62.    Plaintiffs were not paid an hourly minimum wage for the time she was required to wait at Pink Pony until the premises and the parking lot were cleared of customers.

63.    The FLSA Class Members had the same pay structure and were under the same controls as Plaintiffs.

64.    Plaintiffs and FLSA Class Members would work over forty (40) hours in some weeks each worked for Defendants.

65.    Defendants have never paid Plaintiffs and the FLSA Class Members any amount as wages whatsoever, and have instead unlawfully required Plaintiffs and FLSA Class Members to pay them for the privilege of working.

66.    The only source of monies received by Plaintiffs (and the class she seeks to represent) relative to her employment with Defendants came in the form of gratuities received directly from customers, a portion of which Plaintiffs and the FLSA Class Members were required to pay to Defendants.

67.    Although Plaintiffs and the FLSA Class Members are required to and do in fact frequently work more than forty (40) hours per workweek, they are not compensated at the FLSA mandated time-and-a-half rate for hours in excess of forty (40) per workweek. In fact, they receive no compensation

whatsoever from Defendants and thus, Defendants violate the minimum wage requirement of FLSA. *See* 29 U.S.C. § 206.

68.     Defendants' method of paying Plaintiffs in violation of the FLSA was willful and was not based on a good faith and reasonable belief that its conduct complied with the FLSA. Defendants misclassified Plaintiffs with the sole intent to avoid paying her in accordance to the FLSA; the fees and fines described herein constitute unlawful "kickbacks" to the employer within the meaning of the FLSA, and Plaintiffs are entitled to restitution of such fines and fees.

69.     Plaintiffs and FLSA Class Members who worked at Pink Pony performed precisely the same job duties - dancing and entertaining at Pink Pony.

70.     Plaintiffs and FLSA Class Members who worked at Pink Pony during the applicable limitations period(s) were subject to the same work rules established by the Defendants as identified above.

71.     Plaintiffs and FLSA Class Members at Pink Pony were subject to the terms and conditions of employment and the same degree of control, direction, supervision, promotion and investment imposed or performed by Defendants.

72.     Plaintiffs and FLSA Class Members at Pink Pony during the applicable limitations period(s) were subject to the same across-the-board, uniformly applied corporate policy mandated by Defendants.

73.     Plaintiffs and the FLSA Class Members at Pink Pony, during the applicable limitations period, were subject to the same fees and fines imposed by Defendants.

74.     As a result of Defendants' across-the-board, standard operating

procedure of mischaracterizing dancers/entertainers as "independent contractors" and their consequent failure to pay any wages or compensation whatsoever, it is a certainly that numerous other current and former dancers and entertainers who worked at Pink Pony during the applicable limitations period would elect to participate in this action if provided notice of same.

75.    Upon information and belief, more than one hundred (100) dancers and entertainers have worked at Pink Pony during the three (3) to five (5) years prior to the filing of this action.

76.    Plaintiffs are "similarly situated" to the 29 U.S.C. § 216(b) class of persons she seeks to represent, and will adequately represent the interests of the class.

77.    Plaintiffs has hired Counsel experienced in class actions and in collective actions under 29 U.S.C. § 216(b) who will adequately represent the class.

78.    Defendants failed to keep records of tips, gratuities and/or service charges paid to Plaintiffs or any other entertainer and failed to maintain and furnish wage statements to Plaintiffs.

79.    Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

a.    The time of day and day of week on which the employees' work week begins;

b.    The regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the FLSA;

c.    An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

    d.      The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

    e.      The hours worked each workday and total hours worked each workweek;

    f.      The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

    g.      The total premium for overtime hours.  This amount excludes the straight-time earnings for overtime hours recorded under this section;

    h.      The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

    i.      The dates, amounts, and nature of the items which make up the total additions and deductions;

    j.      The total wages paid each pay period; and

    k.      The date of payment and the pay period covered by payment.

29 C.F.R. 516.2, 516.5.

80.     Defendants have not complied with federal law and have failed to maintain such records with respect to Plaintiffs and the FLSA Class Members. Because Defendants' records are inaccurate and/or inadequate, Plaintiffs and the FLSA Class Members can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of their work "as a matter of a just and reasonable inference." *See, e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Plaintiffs seek to put Defendants on notice that she intends to rely on *Anderson* to provide the

extent of her unpaid work.

## B.   INDIVIDUAL LIABILITY UNDER THE FLSA

81.    In *Lamonica v. Safe Hurricane Shutters, Inc.*, the U.S. Court of Appeals for the Eleventh Circuit held that individuals can be liable for FLSA violations under an expansive interpretation of "employer" for directors and officers. *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299 (11th Cir. 2013). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Ninth Circuit stated that the definition of "employer" under FLSA is not limited by the common law concept of "employer" but "is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes."

82.    Where an individual exercises "control over the nature and structure of the employment relationship," or "economic control" over the relationship, that individual is an employer within the meaning of the FLSA, and is subject to liability. *Lambert v. Ackerley* 180 F.3d 997 (9th Cir. 1999) Factors related to "economic control," which included ownership interest, operational control of significant aspects of the day-to-day functions, the power to hire and fire employees, determine salaries, and the responsibility to maintain employment records.

83.    Levesque and Rodriguez are is individually liable for failing to pay Plaintiffs their wages. The actual identities of DOE Managers 1-3 (and perhaps DOES 4 through 100) are unknown at this time.

## V.   COLLECTIVE ACTION ALLEGATIONS

84.    Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph as though

fully set forth herein.

85.     Plaintiffs brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as exotic dancers/entertainers at any time during the three (3) years prior to the commencement of this action to present.

86.     Plaintiffs have actual knowledge that FLSA Class Members have also been denied overtime pay for hours worked over forty (40) hours per workweek and have been denied pay at the federally mandated minimum wage rate. That is, Plaintiffs worked with other dancers/entertainers at Pink Pony. As such, they possess firsthand personal knowledge of the same pay violations throughout Defendants' club. Furthermore, other exotic dancers/entertainers at Defendants' club have shared with her similar pay violation experiences as those described in this Complaint.

87.     Other employees similarly situated to Plaintiffs work or have worked at "Pink Pony" but were not paid overtime at the rate of one and one-half (1 ½) their regular rate when those hours exceeded forty (40) hours per workweek. Furthermore, these same employees were denied pay at the federally mandated minimum wage rate.

88.     Although Defendants permitted and/or required the FLSA Class Members to work in excess of forty (40) hours per workweek, Defendants have denied them full compensation for their hours worked over forty (40). Defendants have also denied them full compensation at the federally mandated minimum wage rate.

89.     FLSA Class Members perform or have performed the same or similar work as the Plaintiffs.

90.     FLSA Class Members regularly work or have worked in excess of

forty (40) hours during a workweek.

91.     FLSA Class Members regularly work or have worked and did not receive minimum wage.

92.     FLSA Class Members are not exempt from receiving overtime and/or pay at the federally mandated minimum wage rate under the FLSA.

93.     As such, FLSA Class Members are similar to Plaintiffs in terms of job duties, pay structure, misclassification as independent contractors and/or the denial of overtime and minimum wage.

94.     Defendants' failure to pay overtime compensation and hours worked at the minimum wage rate required by the FLSA results from generally applicable policies or practices, and does not depend on the personal circumstances of the FLSA Class Members.

95.     The experiences of the Plaintiffs, with respect to her pay, are typical of the experiences of the FLSA Class Members.

96.     The specific job titles or precise job responsibilities of each FLSA Class Member does not prevent collective treatment.

97.     All FLSA Class Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty (40) during a workweek.

98.     All FLSA Class Members, irrespective of their particular job requirements, are entitled to compensation for hours worked at the federally mandated minimum wage rate.

99.     Although the exact number of damages may vary among FLSA Class Members, the damages for the FLSA Class Members can be easily calculated by a simple formula. The claims of all FLSA Class Members arise from a common nucleus of facts. Liability is based on a systematic course of

wrongful conduct by the Defendant that caused harm to all FLSA Class Members.

100.   As such, Plaintiffs brings her FLSA claims as a collective action on behalf of the following class:

> **All of Defendants current and former exotic dancers/entertainers who worked at the Pink Pony located in Tampa, Florida at any time starting three years before this Complaint was filed.**

## VI.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**FAILURE TO PAY MINIMUM WAGE PURSUANT TO FLSA, 29 U.S.C. § 206**

**(By Plaintiffs Individually and on Behalf of the Collective Against All Defendants)**

101.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

102.   Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

103.   Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000).

104.   Defendants failed to pay Plaintiffs the minimum wage in violation of 29 U.S.C. § 206.

105.   Based upon the conduct alleged herein, Defendants knowingly, intentionally and willfully violated the FLSA by not paying Plaintiffs the

minimum wage under the FLSA.

106.   Throughout the relevant period of this lawsuit, there is no evidence that Defendants' conduct that gave rise to this action was in good faith and based on reasonable grounds. In fact, Defendants continued to violate the FLSA long after it learned that its misclassification scheme and compensation policies were illegal.

107.   Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, minimum wage  compensation and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION

### FAILURE TO PAY OVERTIME WAGES PURSUANT TO FLSA, 29 U.S.C. § 207

### (By Plaintiffs Individually and on Behalf of the Collective Against All Defendants)

108.   Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

109.   Each Defendant is an "employer" or "joint employer" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d).

110.   Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

111.   Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000.00).

112.    Defendants failed to pay Plaintiffs the applicable overtime wage for each hour in excess of forty (40) during each workweek in which she worked in violation of 29 U.S.C. § 207.

113.    Based upon the conduct alleged herein, Defendants knowingly, intentionally and willfully violated the FLSA by not paying Plaintiffs the overtime wage required under the FLSA.

114.    Throughout the relevant period of this lawsuit, there is no evidence that Defendants' conduct that gave rise to this action was in good faith and based on reasonable grounds. In fact, Defendants continued to violate the FLSA long after it learned that its misclassification scheme and compensation policies were unlawful.

115.    Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, overtime wage compensation and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION

**UNLAWFUL TAKING OF TIPS IN VIOLATION OF THE FLSA, 29 U.S.C. § 203**

**(By Plaintiffs Individually and on Behalf of the Collective**

**Against All Defendants)**

116.    Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

117.    Plaintiffs customarily and regularly received more than thirty U.S. Dollars ($30.00) a month in tips and therefore is a tipped employee as defined in the FLSA, 29 U.S.C. § 203(t), *see also* 29 C.F.R. § 531.50.

118.    At all relevant times, each Defendants were "employer(s)" or

"joint employer(s)" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. §
203(d).

119.   Defendants are engaged in "commerce" and/or in the production of
"goods" for "commerce" as those terms are defined in the FLSA.

120.   Defendants operate an enterprise engaged in commerce within the
meaning for the FLSA, 29 U.S.C. § 203(s)(1), because it has employees
engaged in commerce, and because its annual gross volume of sales made is
more than five hundred thousand U.S. Dollars ($500,000).

121.   Under TIPA:

> [a]n employer may not keep tips received by its
> employees for any purpose including allowing managers
> or supervisors to keep any portion of employees' tips,
> regardless of whether or not it takes a tip credit.

29 U.S.C. § 203.

122.   Defendants kept a portion of tips paid to Plaintiffs by Defendants'
customers in the form of fees, fines, mandatory charges and other payments to
management, house moms, disc jockeys, and floor men in violation of TIPA.

123.   Defendants required Plaintiffs to participate in an illegal tip pool,
which included employees who do not customarily and regularly receive tips,
and do not have more than a *de minimis*, if any, interaction with customer
leaving the tips (such as the Club DJ, security, and management). *See* U.S.
Dep't of Labor, Wage and Hour Division, "Fact Sheet # 15: Tipped employees
under the Fair Labor Standards Act (FLSA)."

124.   The contribution Defendants required Plaintiffs to make after each
shift was arbitrary and capricious and distribution was not agreed to by

Plaintiffs other dancers; but rather, was imposed upon Plaintiffs and other dancers.

125.  By requiring Plaintiffs to pool her tips with club management, including the individual Defendants named herein, Defendants "retained" a portion of the tips received by Plaintiffs in violation of the FLSA.

126.  Defendants did not make any effort, let alone a "good faith" effort, to comply with the FLSA as it relates to compensation owed to Plaintiffs.

127.  At the time of their illegal conduct, Defendants knew or showed reckless disregard that the tip-pool which they required Plaintiffs to contribute included non-tipped employees and, therefore, was statutorily illegal. In spite of this, Defendants willfully failed and refused to pay Plaintiffs the proper amount of the tips to which she was entitled.

128.  Defendants' willful failure and refusal to pay Plaintiffs the tips she earned violates the FLSA.

129.  Defendants kept a portion of tips paid to Plaintiffs by Defendants' customers in the form of fees, fines, mandatory charges and other payments to management, house moms, disc jockeys, and door men in violation of TIPA.

130.  As a result of the acts and omissions of the Defendants as alleged herein, and pursuant to 29 U.S.C. §§ 216(b) and 260, Plaintiffs are entitled to damages in the form of all misappropriated tips, plus interest; as liquated damages, an amount equal to all misappropriated tips, mandatory attorneys' fees, costs, and expenses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs requests of this Court the following relief:

1.  For compensatory damages according to proof at trial of at least $100,000;

2.      For special damages according to proof at trial;

3.      For restitution of unpaid monies;

4.      For attorneys' fees;

5.      For costs of suit incurred herein;

6.      For statutory penalties;

7.      For civil penalties;

8.      For pre-judgment interest;

9.      For post-judgement interest;

10.     For general damages in an amount to be proven at trial;

11.     For declaratory relief;

12.     For injunctive relief; and

13.     For such other and further relief as the tribunal may deem just and proper.

Dated: January 9, 2020

/s/ Raymond R. Dieppa
Raymond R. Dieppa, Esq.
Florida Bar No. 27690
**FLORIDA LEGAL, LLC**
14 Northeast 1st Avenue,
Suite 1001
Miami, Florida 33132
Telephone: (305) 722-6977
Fax: (786) 870-4030
ray.dieppa@floridalegal.law

Jesenia A. Martinez
California Bar No. 316969
**KRISTENSEN LLP**
12540 Beatrice Street,
Suite 200
Los Angeles, California 90066

Telephone:  (310) 507-7924
Fax:  (310) 507-7906
jesenia@kristensenlaw.com
(*Pro Hac Vice* forthcoming)

Craft Hughes
Texas Bar No. 24046123
**HUGHES ELLZEY, LLP**
1105 Milford Street
Houston, Texas 77066
Telephone:  (713) 554-2377
Fax:  (888) 995-3335
craft@hughesellzey.com
(*Pro Hac Vice* Pending)

***Attorneys for Plaintiffs***

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury for all such triable claims.

Dated: January 9, 2020

/s/ Raymond R. Dieppa
Raymond R. Dieppa, Esq.
Florida Bar No. 27690
**FLORIDA LEGAL, LLC**
14 Northeast 1st Avenue,
Suite 1001
Miami, Florida 33132
Telephone: (305) 722-6977
Fax: (786) 870-4030
ray.dieppa@floridalegal.law

Jesenia A. Martinez
California Bar No. 316969
**KRISTENSEN LLP**
12540 Beatrice Street,
Suite 200
Los Angeles, California 90066
Telephone:  (310) 507-7924
Fax:  (310) 507-7906
jesenia@kristensenlaw.com
(*Pro Hac Vice* forthcoming)

Craft Hughes
Texas Bar No. 24046123
**HUGHES ELLZEY, LLP**
1105 Milford Street
Houston, Texas 77066
Telephone:  (713) 554-2377
Fax:  (888) 995-3335
craft@hughesellzey.com
(*Pro Hac Vice* Pending)

*Attorneys for Plaintiffs*

# EXHIBIT "1"



ATTORNEYS FOR PLAINTIFFS

## CONSENT FORM FOR WAGE CLAIM

Printed Name: **Carla Karoline Campbell**

1.      I consent and agree to be represented by Kristensen, LLP, Hughes Ellzey, LLP and Florida Legal, LLC to pursue my claims of unpaid overtime and/or minimum wage and/or improper Tip Pooling through the lawsuit filed against my employer under the Fair Labor Standards Act and/or applicable state laws.

2.      I intend to pursue my claim individually, unless and until the court certifies this case as a collective or class action. I agree to serve as the class representative if the court approves. If someone else serves as the class representative, then I designate the class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting the litigation, the entering of an agreement with the plaintiffs' counsel concerning attorney's fees and costs, and all other matters pertaining to this lawsuit.

3.      If my consent form is stricken or if I am for any reason not allowed to participate in this case, I authorize Plaintiffs' counsel to use this Consent Form to re-file my claims in a separate or related action against my employer.

(Signature) _____ (Date Signed) 1/8/2020 _____

DocuSigned by:
806B46B1DFD4437
Carla Karoline Campbell

# EXHIBIT "2"

DocuSign Envelope ID: 523C4560-DE24-4453-BC3C-BA320626B8E2



John P. Kristensen
Jesenia A. Martinez
Jacob J. Ventura

## CONSENT FORM FOR WAGE CLAIM

Printed Name: **Leah Ligon**

1.    I consent and agree to be represented by Kristensen LLP and Hughes Ellzey, LLP and to pursue my claims of unpaid overtime and/or minimum wage and/or improper Tip Pooling through the lawsuit filed against my employer under the Fair Labor Standards Act and/or applicable state laws.

2.     I intend to pursue my claim individually, unless and until the court certifies this case as a collective or class action. I agree to serve as the class representative if the court approves. If someone else serves as the class representative, then I designate the class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting the litigation, the entering of an agreement with the plaintiffs' counsel concerning attorney's fees and costs, and all other matters pertaining to this lawsuit.

3.    If my consent form is stricken or if I am for any reason not allowed to participate in this case, I authorize Plaintiffs' counsel to use this Consent Form to re-file my claims in a separate or related action against my employer.

(Signature) _Leah Ligon_ _____ (Date Signed) 1/7/2020 _____

Leah Ligon